Well, good morning and welcome to Philadelphia on this rather gloomy day. Our first case today is D.G.M. v. Attorney General, number 17-3360. You may proceed. You can proceed. May it please the Court, Rachel Goodman for D.G.M. May I please reserve two minutes of my time for rebuttal? You may. Thank you, Your Honor. D.G.M. was ordered deported by an immigration judge who told him, I believe you, but I needed objective proof that you were tortured in Jamaica. Because the government possessed but never disclosed that objective proof, because D.G.M. repeatedly requested that objective proof, and because to date no immigration judge or BIA official has ever seen that objective proof. Ms. Goodman, could you address the second prong? In other words, even if we agree with your argument, would that change our analysis with respect to the acquiescence of the Jamaican government? Do you follow the question? I'm sorry, could you? So in order to secure cat relief, one of the issues you have to undertake is proof that the government acquiesced in that sort of torture. So even if we accept the argument that the government should have provided this document, would that impact that second prong? Yes, Your Honor. How would it? The letter that was not disclosed does speak to the prong of acquiescence. And if I can direct this court to DEA 13, which is part of that letter. That letter reads, in describing Jamaica, it says, he's fearful of returning to Jamaica, comma, where he faces retribution from family members and associates of these offenders, who are known to be residing in Jamaica. Now the letter also says, also addresses the fact that D.G.M. would face violence once he returns there to Jamaica. So we have his fears, and we have DEA reporting what might be his fears and more, but how does that get you to the demanding more likely than not standard? I mean, sorry, on acquiescence, let's set aside the probability. Let's focus on how does that affect that the government is in fact, you know, responsible for the things that he fears? What evidence is there? This is a letter from the DEA to Homeland Security Investigations, which is part of ICE in support of an S visa application. The DEA is not simply documenting that he is fearful of torture. It's documenting that Jamaica is a place where he would face torture. But Judge Restrepo's question is, is it by or on behalf of or with the acquiescence of the Jamaican government? What shows that? Again, the fact that they're describing Jamaica as the place where he faces retribution, that doesn't speak only to torture. That speaks to acquiescence as well. Retribution can be by gangs, jilted lovers. Any number of people can inflict retribution. What in there ties it to the government's agreeing to this? Part of that acquiescence inquiry addresses whether the government is capable of stopping it. And again, for an S visa application, one of the requirements for an S visa application is that the applicant has been or will be placed in danger. Now, if he just was facing threats of torture, but the government was capable of stopping it or willing to stop it, he wouldn't be in danger. Acquiescence means more than the government is trying but failing to stop it. It means it's agreeing to it or allowing it to happen. What gets you that extra step? Even accepting, even if, and we maintain that the letter is proof of both torture and acquiescence, but even if the letter was only proof of torture, if this court examines the country conditions report that was part of the record, that would have spoken to acquiescence, that having this letter and knowing what the actual threat is, knowing that a part of it. Well, but just sticking on acquiescence, I mean, isn't there things in the record that state, hey, there may be corruption, let's say, but they're trying to prosecute. There's evidence of prosecution of police. That doesn't show acquiescence, does it? Evidence that the government is actively trying to combat that type of corruption is, in and of itself, does not preclude a petitioner from showing acquiescence. Is there something specific you want to point us to in the record? Some portion of the country conditions is something that says the government is letting this happen. Yes, Your Honor. Your Honor, if I could direct this court to page 338 of the joint appendix. This is the country conditions report that the government submitted. It says there were reports that government security forces committed arbitrary or unlawful conditions. On page 341 of the record, which is that same report, it talks about the limited efforts to investigate and punish abuse and corruption in general. It describes the hundreds of active cases for government security officials in their alleged involvement in unlawful killings or abuse. Let me go back to the letter for a minute in terms of the Brady argument you're making. Yes. Could you put that in a civil context for me? Absolutely. The argument that we're making, and Brady is an analogy because Brady and its progeny are based on due process. The argument is that in this case, we have an amalgamation of factors here. We have that DGN's claim, the entire thrust of his claim, is based on his relationship with our government as a DEA informant and the danger that would put him in. So what obligation did the IJ have? As I read the record, your client agreed to proceed and deferred to the IJ with respect to this letter. What obligation should we impose on an immigration judge in that scenario? Immigration judges do have an obligation to develop the records of the cases before us. In Saravia, this court held that that obligation is heightened when there is a pro se petitioner before them, such as DGN. In that context, and I would just like to point out as well that immigration judges are afforded tools as well in order to forward those responsibilities. The immigration judge has subpoena power, and he had the power to impose sanctions for failure to comply with orders. So the judge certainly could have obtained this letter. With respect to DGN deferring to the immigration judge in order to proceed with this case, first I would point out that that deferral occurred after he had initially, at the March 5th, 2017 hearing, requested the letter and again began the May 16th hearing by again requesting the letter. And the judge says, okay. And it's only after that point that the judge says, do you want to do this today or do you want to wait a couple of weeks and come back? And faced with the prospect of going back to being incarcerated or doing this now, DGN said, I'll defer to you, judge, the person who would make that ultimate decision. Okay, let's assume that we don't hold that waiver, treat that as a waiver. I think Judge Restrepo's question was about trying to apply Brady in a civil context. But even in a criminal context, Brady does not require the government to go out and get evidence. It only requires disclosing the evidence that's already in this prosecutor's office's control. It doesn't even necessarily mean you go to a different jurisdiction to get what they've got. So aren't you asking us for a right in a civil context that's substantially broader than what criminal defendants get? First, I would say we are not asking this court to extend Brady to all of immigration proceedings. We're really asking that when the entire relationship, when a petitioner's entire claim is based on this type of thing, the government's in sole possession of that document. The government doesn't produce it. Wait, who's the government? Who has the document? Well, the document is authored by the DEA, but it is sent to ICE. Okay. That is the recipient of that document. So, wait, you're confident that ICE already had this document as of this time? So the DEA letter that is produced here is an October 9, 2013 document, and there is a response that is sent from ICE that is in his file that is part of what is produced in this case. Are you asking us to impose that responsibility on the judge? We are not asking that this court always impose an affirmative responsibility on the judge, but the judge did tell DGM that he would obtain that letter, that it would be part of the consideration, and DGM was entitled to rely on that commitment from the judge that he said he would, he said, okay, I'll do it. But how do you square that with, I'm reading what DGM said to the IJ, I don't think you even need to call Mr. Rinaldo, my federal attorney, and obtain the document. I mean, you know, you're saying there's an obligation. Your client said, we're good. Our client was a pro se petitioner at that point, and I think the context in which he said that is incredibly important here. DGM had requested the letter during two different hearings. The letter had not been produced. The judge repeatedly affirmed him, saying, I find you to be credible, I believe you, and this is the last thing that DGM says to the judge before the judge is about to go into his chambers and make his decision deciding whether or not to deport DGM. Yes, how could he have known as a pro se petitioner the lasting effect that that would happen? And, again, after the judge had already agreed to do it and is telling him, I believe you, I think you're credible, I believe everything you've told me. Maybe we could switch it up a little bit. Your due process claim, is that exhausted? Do we have jurisdiction over that? The due process claim is exhausted, Your Honor, and I can point this court to places where he has exhausted that, but I would just like to first contextualize that by saying that this court has held that as long as an immigration petitioner makes some effort, however insufficient, to place the board on notice of a straightforward issue being raised on appeal, the petitioner is deemed to have exhausted his administrative remedies. And that comes from Yanlan Wu, and in that case, I would just point out that before the BIA, the petitioner in that case argued that the immigration judge's findings were not supported by the evidence. Before the Third Circuit, represented by counsel, the petitioner argued specifically an interview conducted in the airport was not adequately considered, and this court held that that was sufficient for exhaustion. The inquiry here is whether there is a claim hovering around the immigration judge's findings. And before the BIA, if I can direct this court to page 65 of the joint appendix, there, that's DGM's appeal to the BIA, and he is talking about his interactions with the DEA and immigration, and says they, the DEA, also wrote letters on his behalf to the United States Department of Justice explaining the threats DGM received and the danger he would face if he was to be deported and the reason a request for an S visa should be granted. He gives one sentence about the purpose of CAT, and then the very next sentence is, all evidence related to the possibility of torture should be considered in determining whether the Convention Against Torture will protect an individual. Next page, he says, respondent has not had the opportunity to adequately develop the record. He makes similar statements on pages 40, 46, 49, 64 of the joint appendix, and that's further discussed in our reply brief on pages 5 to 8. So this claim is absolutely exhausted, and I would like to, oh, Your Honor, I see my time is up. Yeah, go ahead. Go ahead. Finish your thought. I would just like to point out here that the government and I are in agreement about what the remedy for an exhausted meritorious due process claim is here. The government does not contest that the remedy is a remand. Thank you, counsel. We'll hear your rebuttal. Good morning. You may proceed. Good morning, Your Honors. Anna Juarez for the respondent, Attorney General. The court is limited to reviewing only legal and constitutional issues in this case, and Petitioner raises two legal and constitutional issues. First, the unexhausted due process claim regarding the letter, and then raises a legal claim that the agency didn't apply the right standard as to the acquiescence prong. Addressing the due process claim first, it's not exhausted. Never before the IJ did the Petitioner state a DEA letter. As Your Honors have noted, there's really, if you look through the record and the transcript and read it in its entirety and not picking out these particular comments, Petitioner did state that he had a sensitive document that his criminal attorney had. The immigration judge told him, if DHS does not submit it, please write to me and I will have my clerk contact your criminal attorney. DHS submitted documents. Petitioner then filed his asylum application. He didn't file the written statement. At the end of the day, he was relying on the IJ to secure this document, wasn't he? That's pretty clear from the record. He continued to ask the IJ. And he was pro se? He was pro se. He raised it. He then brought a lot of documents to the IJ on the merits hearing. The IJ commented because he's pro se, he will look at all the evidence, even though it was the day of the hearing, which is not the immigration court rules. He asked the petitioner if he wanted a continuance. The petitioner deferred to him. He then let him testify. The IJ credited all of his testimony. He hasn't pointed out anything that the immigration judge missed in his testimony? But, I mean, along the lines of what Judge Estrepo said, on page 287 we have, I mean, it seems that there was a clear expectation on DGM's behalf. He said, I appreciate you making efforts to obtain this for me. So there was a clear expectation on his part that the IJ was going to do something. And I don't think the IJ disabused him of that. I believe he had expectations. But, as Your Honor, it's also noted at the end of the testimony, he told the IJ, you seem to believe my claim. He hasn't stated anything that the IJ didn't, you know, discredited from his very thorough testimony. He told the IJ, I don't think you need to contact my criminal defense attorney for this document. So there was really nothing that would indicate to the immigration judge that there was something missing. And yet also within the documents he had given the IJ. But wouldn't this letter have strongly corroborated his claim? It would provide corroboration, but this isn't a lack of corroboration case. The immigration didn't find, well, you're credible, but I don't, you need corroborating evidence. The immigration judge credited his entire claim. He hasn't pointed out anything that the IJ missed. The IJ just found, even assuming, you know, the threats, the fear of retribution, it was just speculative. It was based on a chain of assumptions that he would go back, that people would find him, that all of these things would fall into place. And the factual record isn't before the court at this time. It's whether there's a legal or constitutional issue. He hasn't, other than this letter, which arguably would corroborate the claim, he's not arguing that there's ignored evidence or missed evidence, or that there's something that would have added to the claim before the immigration judge and the board. So what happens if we disagree with you, that it was exhausted? Well, there's also the acquiescence claim. I'm talking about just on the due process claim. Just on the due process, because the board did not get to it, I mean, because they didn't even address any due process claim, there's other evidence that they weren't aware that this DA letter was a thing, and that there was a due process claim before it. So just with regard to the due process, that we need to go back to the board to consider. And also on that point, petitioner had an avenue of relief. As soon as he received the letter, he could have filed a motion to reopen with the board. He could have asked DHS to join a motion to reopen in order to present this evidence to the board. I don't understand why you're not challenging the due process claim on the merits. It doesn't seem like we've ever recognized a due process right like this. You're just putting all your eggs in the exhaustion basket. Because the board didn't reach the due process claim. Or didn't reach it. Yeah. So, I mean, I don't think there's a due process claim, but because the board didn't reach it. But it's a tenery matter. It's a tenery matter. You're arguing that regardless of whether we remand, they can still move to reopen before the BIA. Is that what you're saying? Well, if it's remanded to the BIA, there wouldn't be a reason to reopen. But they could have in the past year. I mean, they've had this for a year. The BIA could have even addressed it by this point. So they're relying only on the unexhausted due process argument. Let's say we side with you. Is there a possibility of a sua sponte reopening here or some other way to consider this letter? Or is the case just over at this point? Well, the board could sua sponte reopen if it was before. If they presented a motion to reopen with the board, that would be in the board's. Could they do that at any time? Yeah, they could have done it at any time. Going forward, could they do it? They still could do it now. But also, even if the court believes that it's exhausted, there's also the acquiescence claim. And we would argue that it doesn't. There's nothing in the letter that says anything about the Jamaican government that would have anything to do with the acquiescence portion of the determination. And in this case, they argue that the board applied the wrong standard for acquiescence here. They conceded that the board cited the correct standard, that there's two prongs. The first one is reviewing the factual portion for clear air and then reviewing the legal portion of the claim for de novo. Here, the board reviewed the IJ's factual findings about what the Jamaican government would do and found that his claim was speculative. And that's in line with other cases by this court. Dennis found that the question is whether prison officials would torture. They found whether prison officials would torture him was a speculative claim. It then upheld the acquiescence claim. What kind of thing do we do with the discussion in the briefing about the length of the prison sentences these individuals received? Well, that would be a part of the factual determination that won't be before the court, if that's what your honor is asking. More or less. I mean, does it matter they received long sentences in terms of whatever threat might be confronting this individual should he go back to Jamaica? I believe that was part of the agency's analysis, whether there was a clear probability of torture. But that was part of the question of whether there's substantial evidence that supports that finding is a factual issue that isn't before the court. And really, it's just legal or constitutional issues. And again, he hasn't argued that the IJ missed any evidence. It's just IJ found it was speculative as to that prong. And as for the acquiescence prong, Dennis found that in a similar fund that prison officials being willfully blind was speculative. It upheld that for the acquiescence prong. Recently, in 2017, there's a very similar unpublished case, post Miri, where the petitioner had cooperated with the government against testifying against gang members in El Salvador. The agency found that the Salvadoran government was corrupt. And there was police brutality and gang brutality, but found that it was just it was speculative that the Salvadoran government would be willfully blind in this person's possible torture. And the court upheld that. And this case is very similar to that case. Any more counsel? No, not if there are any more questions. Right. Thank you. Thank you very much. We'll hear from petitioners, counsel. Ms. Goodman, could you start by addressing that last point? Is this case distinguishable from Miri as to whether the risk of harm is more than speculative? Yes, Your Honor. The risk of harm in this case, if I maybe could begin by pointing this court to King Taros, this court's recent decision in King Taros, where the board was found to be required to consider whether the government is capable of preventing the harm. That was integral to that inquiry there. And if I can just address two points that that government counsel said. First, the government admitted that the letter was corroborating evidence. The letter also answers the judge's questions about what was unknown, and it directly refutes the immigration judge's findings that there is no evidence of family members or other people in Jamaica who would be likely to torture DGM. And second, with respect to the letter and acquiescence, the DEA does not write a letter unless there is a real risk of this happening here. And the letter was just one piece of evidence that was to be weighed by the immigration judge. And unless this court has any other questions, we would be prepared to rest on the brief. All right. Thank you, counsel. We'd like to take the opportunity to thank counsel.